ERIC P. LEE (#4870)
JOSEPH D. KESLER (#12138)
CLYDE SNOW & SESSIONS
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
801-322-2516
801-521-6280 – fax

Attorneys for Plaintiff
_____

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| JERI RICE,<br><br>            Plaintiff,<br><br>vs.<br><br>DEER CREST JANNA, LLC, DEER CREST MASTER ASSOCIATION, INC., MICHAEL ZACCARO, GREGSON PERRY, LYNDA FETTER, ROBERT SAMMONS and THOMAS HODGSON,<br><br>            Defendants. | **COMPLAINT**<br><br><br>Civil No. _____<br><br>Judge _____ |
|---|---|

Plaintiff complains of Defendants and allege as follows:

**PARTIES**

1. Plaintiff Jeri Rice is a resident of the state of Washington. Ms. Rice owns a second home located at Lot 120, Deer Crest Subdivision, in Wasatch County, Utah.

2. Defendant Deer Crest Janna, LLC ("Janna") is a Delaware limited liability company formed in July 2005. Janna maintains a place of business in Wasatch County, Utah.

3. Defendant Deer Crest Master Association, Inc. (the "Association") is a Utah non-profit corporation whose principal place of business is in Wasatch County, Utah.

4. Defendant Michael Zaccaro is believed to be a resident of Connecticut and serves as a member of the Association's board of directors (the "Board") in Wasatch County, Utah. Any reference herein to the "Board" includes Zaccaro.

5. Defendant Gregson Perry is believed to be a resident of California and serves as a member of the Association's board of directors in Wasatch County, Utah. Any reference herein to the "Board" includes Perry.

6. Defendant Lynda Fetter is believed to be a resident of California and serves as a member of the Association's board of directors in Wasatch County, Utah. Any reference herein to the "Board" includes Fetter.

7. Defendant Robert Sammons is believed to be a resident of Utah and serves as a member of the Association's board of directors in Wasatch County, Utah. Any reference herein to the "Board" includes Sammons.

8. Defendant Thomas Hodgson is believed to be a resident of California and serves as a member of the Association's board of directors in Wasatch County, Utah. Any reference herein to the "Board" includes Hodgson.

## JURISDICTION AND VENUE

9. The Court's jurisdiction is conferred by 28 U.S.C. §1332(a) as none of the defendants are citizens of the state of Washington.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

## FACTS

11. Deer Crest is a master planned, gated community developed in Wasatch County, Utah in the late 1990s by Deer Crest Associates I, LLC ("DCA"). Deer Crest is comprised

mostly of single-family residences with some townhomes and, at its western boundary, a parcel for a hotel.

12.     DCA touted Deer Crest as a secure, quiet and exclusive neighborhood with property values safeguarded by strict development and use controls.

13.     Ms. Rice purchased two Deer Crest lots in 1998.  She later sold the lots and in 2001, relying on DCA's promises of a private and quiet mountain retreat, she invested several million dollars purchasing her current lot, Lot 120, and building her Deer Crest home.

14.     The documents governing development in Deer Crest at the time Ms. Rice purchased her Deer Crest property (the "Governing Documents") include each of the following:

   a.   "*Settlement Agreement By and Between Park City Consolidated Mines Company, a Utah corporation, Trans-Wasatch Company, L.L.C., a Utah limited liability company, and Park City Municipal Corporation, a political subdivision of the State of Utah*" dated December 29, 1995 (the "Settlement Agreement") and recorded in the office of the Wasatch County Recorder.

   b.   "*First Amended Findings and Order on Density Determination*" issued by the Wasatch County Board of County Commissioners on August 5, 1996 (the "Density Determination") and recorded in the office of the Wasatch County Recorder.

   c.   "*Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Deer Crest*" dated October 31, 1997 (the "Declaration") and recorded in the office of the Wasatch County Recorder.

16.     The Governing Documents include parameters for development of what will become the St. Regis Hotel (the "Hotel").

17. For example, the Governing Documents address the anticipated parking demands created by the Hotel with a plan to focus Hotel parking in the Snow Park area of Deer Valley.

18. The intent behind the plan focusing Hotel parking at Snow Park was to minimize traffic within the entire Deer Crest community between the East and West entry gates.

19. As reflected in the Settlement Agreement, the plan included an outright prohibition against overnight parking at the Hotel site. It allowed 50 days spaces at the Hotel but all other parking, including all overnight parking, was planned at Snow Park with access to the Hotel via a funicular.

20. Wasatch County affirmed the overnight parking ban when it issued the Density Determination establishing the conditions under which Deer Crest would ultimately be developed.

21. The Density Determination, the Settlement Agreement and all other recorded documents when Ms. Rice purchased her Deer Crest property established two critical points: (a) all Hotel guests and employees were to access the hotel from Snow Park via the funicular and (b) the Deer Crest roads were not to be burdened by Hotel traffic.

22. By 2001, DCA had annexed into Park City the Deer Crest parcel that would eventually hold the Hotel, and had acquired from Park City the original conditional use permit for the Hotel (the "CUP").

23. Shortly thereafter, DCA took the first in a series of calculated steps which, if they come to fruition, will effectively destroy Deer Crest's quiet, secure and exclusive qualities by turning the main road through Deer Crest, then known as Keetley Road, into a public thoroughfare for the Hotel's:

(a) guests, chauffeurs and valets (using both the East and West gates);

(b) employee bus system (using the East gate);

(c) overflow guest shuttle system (using the East gate); and

(d) delivery trucks and other commercial vehicles (using the East gate).

24.     DCA's first step was the initiation of formal proceedings in 2001 to shift parking from Snow Park to the Hotel site. DCA accomplished this step by securing an amendment to the Settlement Agreement on April 6, 2001 allowing 105 overnight parking spaces at the Hotel.

25.     The amendment to the Settlement Agreement expressly conditions DCA's right to overnight parking at the Hotel on evidence that doing so will not increase traffic on Keetley Road (now known as Deer Hollow Road). DCA has not supplied and cannot supply the required evidence.

26.     DCA never told the other Deer Crest owners of its plans to shift parking from Snow Park to Deer Crest. DCA intentionally kept the plans undisclosed, knowing that other owners would object because the inevitable result of moving parking to Deer Crest would be additional traffic in Deer Crest.

27.     The Association, through at least some of the Board members, had notice of DCA's efforts to reallocate parking but did not oppose the efforts and did not tell the Deer Crest homeowners what it knew because DCA exercised effective control over the Board and, through it, the Association. DCA owned a majority of the Deer Crest lots. By virtue of that ownership, DCA controlled the Board, using its appointment and voting powers to ensure its agents occupied all Board seats.

28.     In fact, DCA has held a majority vote in the Association since the Association was created almost 12 years ago. Using its majority vote, DCA installed and kept its own representatives on the Board, including its employee, defendant Lynda Fetter and its legal

counsel, defendant Gregson Perry. Recently, DCA installed a principal of Janna's manager, defendant Michael Zaccaro, as a member of the Board.

29. Despite the fiduciary duties they owed the Deer Crest owners, the Association and Board refused to disclose or oppose DCA's plans because doing so was contrary to DCA's interests.

30. By 2005, DCA had partnered with Janna to develop the Hotel. DCA owns a 50% stake in Janna.

31. In 2007, in collusion with Janna, DCA took its second step to shift parking from Snow Park to Deer Crest. Specifically, DCA leased to Janna a parcel at Jordanelle Village within the Deer Crest community which Janna intends to use as a 185 space lot for employee and overflow guest parking. As before, the Board was aware of Janna's effort to shift parking from its intended location at Snow Park but the Board made no effort to inform any other Deer Crest owner.

32. In direct violation of the Governing Documents, Janna plans to stage its employee bus system from the parking lot, using 25 passenger buses to move three shifts of 130 employees up and down Deer Hollow Road night and day, from 6 AM to at least midnight, through the Deer Crest community and directly past Ms. Rice's house 50 times a day, 365 days a year.

33. Recently, the Board gave Janna express permission to implement its employee busing plan using Deer Crest's private road system, turning the road system into a public transportation corridor for the Hotel's employees. No Deer Crest owner besides DCA and Janna approved or were even asked to approve the employee busing plan.

34. In fact, sometime earlier this year the Board gave Janna permission to implement its entire "program" related to Hotel access as detailed in a Janna document titled "Entry Control Management Program, St. Regis Deer Crest Resort" (the "Hotel Access Scheme").

35. The Board approved the Hotel Access Scheme without notice to or the approval of Deer Crest owners other DCA and Janna.

36. According to the Hotel Access Scheme, the Board gave Janna permission:

(a) to allow hotel guests through both the East and West Deer Crest gates;

(b) to allow chauffeurs through both the East and West gates;

(c) to allow Hotel valets through both the East and West gates; and

(d) to allow delivery trucks and other commercial vehicles through the East gate.

37. When Ms. Rice pointed out that no Deer Crest owner was aware of the permission given Janna to use Deer Crest's private road system, counsel for the Association claimed permission was granted by "two disinterested members of the Deer Crest Board ..." and that "[n]o formal board (or member) vote was required as it is within the purview of the authority of board's [*sic*] management authority."

38. The last study analyzing Hotel traffic was completed in 2000.

39. Despite repeated requests from both Park City and Ms. Rice, Janna steadfastly refuses to provide an updated traffic study analyzing the current Hotel traffic impacts or the impacts that will inevitably result when Deer Hollow Road is disconnected as required by the Settlement Agreement.

40. One result of Janna's refusal is that the Board had no objective analysis of the Hotel Access Scheme and its detrimental impacts on traffic within the Deer Crest gates at the time the Board approved the Hotel Access Scheme.

41. Since the date of the last study analyzing Hotel traffic, the CUP was issued (on February 28, 2001) and then amended five times, on July 25, 2001, March 24, 2004, May 11, 2005, March 22, 2006 and June 18, 2009.

42. The Association received notice of the applications submitted to Park City for the CUP and each of its amendments. Many of the notices were addressed to defendant Lynda Fetter. None of the notices were forwarded to the Deer Crest owners.

## FIRST CAUSE OF ACTION
### (Breach of Contract -- Janna)

43. Rice incorporates by reference all preceding allegations.

44. The Association was created by DCA and charged with administering and enforcing the Declaration, among other responsibilities.

45. Janna is a member of the Association as the owner of the Deer Crest parcel on which the Hotel is currently being built.

46. Like all other Association members, Janna is obligated to comply with the terms of the Declaration.

47. The Board and each of its members have an obligation to ensure the Association acts in compliance the Declaration.

48. Section 7.1 of the Declaration prohibits use of Deer Crest property in a manner which is contrary to the Settlement Agreement, the Density Determination and applicable zoning regulations.

49. In a direct affront to the rights of the other Deer Crest property owners, Janna has expressed an unequivocal intent to breach the Declaration by using Deer Crest property in a manner that violates Section 7.1. Specifically, Janna intends to:

(a) use a Jordanelle Village parking lot for Hotel parking in direct violation of Section 11A of the Density Determination, which requires "all parking spaces [to] be located on the same parcel as the building or use for which they are required";

(b) use a Jordanelle Village parking lot for Hotel parking in direct violation of Wasatch County Code Section 16.20.07, which also mandates that parking be located near the use for which it is required;

(c) park overnight at the Hotel site in a manner contrary to the Second Amendment to the Settlement Agreement; and

(d) allow hotel guest and employee access via Keetley Road and the West Deer Crest gate in direct violation of Sections 5.2.2.9 and 5.2.3.8 of the Settlement Agreement.

50. Ms. Rice met with Janna in an effort to find alternatives to the Jordanelle Village parking lot and the employee bus system but Janna, motivated solely by financial considerations, refused to consider viable alternatives or otherwise negotiate in good faith.

51. As a direct and proximate result of the referenced breaches by Janna, Ms. Rice has been damaged through diminution in the value of her home in an amount estimated by Ms. Rice to exceed $1 million.  In addition, Ms. Rice is entitled to preliminary and permanent injunctive relief prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

## SECOND CAUSE OF ACTION
**(Breach of Contract -- Association and Board)**

52. Rice incorporates by reference all preceding allegations.

53. The Association was created by DCA and charged with administering and enforcing the Declaration, among other responsibilities.

54. Janna is a member of the Association as the owner of the Deer Crest parcel on which the Hotel is currently being built.

55. Like all other Association members, Janna is obligated to comply with the terms of the Declaration.

56. The Board and each of its members have an obligation to ensure the Association acts in compliance the Declaration.

57. Section 7.1 of the Declaration prohibits use of Deer Crest property in a manner which is contrary to the Settlement Agreement, the Density Determination and applicable zoning regulations.

58. In a direct affront to the rights of the other Deer Crest property owners, the Association and Board anticipatorily breached the Declaration by permitting Janna's proposed use of Deer Crest property in a manner that violates Section 7.1. Specifically, at Janna's request the Association and Board have agreed Janna may:

(a) use a Jordanelle Village parking lot for Hotel parking in direct violation of Section 11A of the Density Determination, which requires "all parking spaces [to] be located on the same parcel as the building or use for which they are required";

(b) use a Jordanelle Village parking lot for Hotel parking in direct violation of Wasatch County Code Section 16.20.07, which also mandates that parking be located near the use for which it is required;

(c) park overnight at the Hotel site in a manner contrary to the Second Amendment to the Settlement Agreement; and

(d) allow hotel guest and employee access via Keetley Road and the West Deer Crest gate in direct violation of Sections 5.2.2.9 and 5.2.3.8 of the Settlement Agreement.

59.     In addition, the Association and Board breached the Declaration by otherwise failing to manage and regulate access through the Deer Crest control gates and regulate use of the private Deer Crest roads as required by Declaration Section 3.3.

60.     As a direct and proximate result of the referenced breaches by the Association and Board, Ms. Rice has been damaged through diminution in the value of her home in an amount estimated by Ms. Rice to exceed $1 million.  In addition, Ms. Rice is entitled to preliminary and permanent injunctive relief prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

### THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

61.     Ms. Rice incorporates by reference all preceding allegations.

62.     The Declaration and other Governing Documents were intended to make Deer Crest a secure, quiet and exclusive community with property values safeguarded by strict development and use controls.

63.     Janna's planned use of Deer Crest property in violation of the Governing Documents and the decisions by the Association and Board to allow such use:

(a)  are motivated solely by Janna's financial interests;

(b)  are inconsistent with Ms. Rice's justified expectations for use of the property;

(c)  are not faithful to the agreed common purposes of the Governing Documents; and

(d)  detrimentally impact Ms. Rice's right to receive the benefits intended by the
    Governing Documents.

64.     As described herein, Janna failed to perform its obligations and the Association and Board failed to perform their duties under the Declaration reasonably and in good faith.

65. As a direct and proximate result of the referenced breaches by Janna, the Association and Board, Ms. Rice has been damaged through diminution in the value of her home in an amount estimated by Ms. Rice to exceed $1 million.  In addition, Ms. Rice is entitled to preliminary and permanent injunctive relief prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

### FOURTH CAUSE OF ACTION
### (Breach of fiduciary Duty)

66. Rice incorporates by reference all preceding allegations.

67. In addition to the duties imposed on the Association and Board by the Governing Documents, at all times pertinent to the events detailed in this Complaint the Association and Board owed Ms. Rice a duty:

   (a) to use care and prudence in managing the Deer Crest roads and other property;

   (b) to treat Ms. Rice and the other Deer Crest owners honestly, fairly, reasonably and impartially in exercising any discretionary powers; and

   (c) to provide Ms. Rice and the other Deer Crest owners reasonable notice and information about matters affecting the Deer Crest roads and other property.

68. In addition to their other duties, at all times pertinent to the events detailed in this Complaint each individual member of the Board owed Ms. Rice and the other Deer Crest owners a duty to discharge his or her duties:

   (a) in good faith;

   (b) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

   (c) in a manner believed to be in the best interest of the Association.

69. Through action and inaction, the Association and each member of the Board breached or otherwise failed to discharge the duties described in the preceding paragraphs:

  (a) by allowing their decisions to be influenced by DCA's financial interests;

  (b) by favoring the interests of Janna over the other Deer Crest property owners;

  (c) by failing to exercise any discretionary authority honestly, fairly, reasonably and impartially;

  (d) by sanctioning use of the Deer Crest roads and other property in violation of the Declaration; and

  (e) by failing to provide Ms. Rice and other Deer Crest property owners reasonable notice and information about matters affecting Deer Crest.

70. Each Board member understood that permitting Janna's planned use of the Deer Crest roads and other property, as described herein, was not in the best interests of the Association.

71. The Board members' breaches and failures to perform were willful or, in some cases, grossly negligent.

72. As a direct and proximate result of the referenced breaches by the Association and Board, Ms. Rice has been damaged through diminution in the value of her home in an amount estimated by Ms. Rice to exceed $1 million.  In addition, Ms. Rice is entitled to preliminary and permanent injunctive relief prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

### FIFTH CAUSE OF ACTION
### (Declaration Enforcement)

73. Ms. Rice incorporates by reference all preceding allegations.

74. As a member of the Association, Janna is subject to the requirements of the Declaration, including the restrictions against using Deer Crest roads and other property in any manner contrary to the Density Determination, the Settlement Agreement or applicable zoning regulations.

75. Janna has expressed an unequivocal intent to use the Deer Crest roads and other property in violation of the referenced Declaration restrictions.  In particular, Janna intends to:

   (f) use a Jordanelle Village parking lot for Hotel parking in direct violation of Section 11A of the Density Determination;

   (g) use a Jordanelle Village parking lot for Hotel parking in direct violation of Wasatch County Code Section 16.20.07;

   (h) park overnight at the Hotel site in a manner contrary to the Second Amendment to the Settlement Agreement; and

   (i) allow hotel guest and employee access via Keetley Road and the West Deer Crest gate in direct violation of Sections 5.2.2.9 and 5.2.3.8 of the Settlement Agreement.

76. Pursuant to Section 9.1 of the Declaration, Ms. Rice has the right to enforce the Declaration, including the right to enjoin any violation of the Declaration.

77. Janna's expressed intent to use the Deer Crest roads and property in the manner described constitutes an anticipatory breach of the Declaration.

78. As a result of Janna's breach, Ms. Rice is entitled to preliminary and permanent injunctive relief prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

### SIXTH CAUSE OF ACTION
### (Quiet Title)

79. Ms. Rice incorporates by reference all preceding allegations.

80. With her Deer Crest property, Ms. Rice acquired an express easement over the Deer Crest roads.

81. Janna's planned use of the Deer Crest roads will substantially interfere with and disturb Ms. Rice's continued use and enjoyment of her easement over the roads and make that use less convenient and beneficial.

82. According to the Association, with its Deer Crest property Janna acquired an express easement over the Deer Crest roads.

83. Janna's planned use of its easement over the Deer Crest roads exceeds the allowed extent of that use.

84. Janna's planned use of its easement over the Deer Crest roads is inconsistent with the intended use of the easement.

85. Janna claims a right or interest in the Deer Crest roads adverse to the rights and interests of Ms. Rice.

86. Pursuant to Utah Code §78B-6-1301(2008), Ms. Rice is entitled to an order of the Court quieting title to the parties' easement rights by enjoining Janna's planned use of the Deer Crest roads in any manner inconsistent with those easement rights.

### SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)

87. Ms. Rice incorporates by reference all preceding allegations.

88. Pursuant to 28 U.S.C. § 2201, plaintiff and defendants are entitled to the Court's declaration of their rights and other legal relations as determined by the Governing Documents and the facts and circumstances alleged herein.

89. Pursuant to 28 U.S.C. § 2202, Ms. Rice is entitled to further relief based on the Court's declaration, including preliminary and permanent injunctive relief prohibiting use of

Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents.

WHEREFORE, plaintiff Jeri Rice demands judgment as follows:

A. On the First Cause of Action, for damages against Deer Crest Janna, LLC in an amount to be proven at trial but in any event not less than $1 million, for preliminary and permanent injunctions prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for pre and post judgment interest, costs, and a reasonable attorney's fee;

B. On the Second Cause of Action, for damages against Deer Crest Master Association, Inc., Michael Zaccaro, Gregson Perry, Lynda Fetter, Robert Sammons and Thomas Hodgson , jointly and severally, in an amount to be proven at trial but in any event not less than $1 million, for preliminary and permanent injunctions prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for pre and post judgment interest, costs, and a reasonable attorney's fee;

C. On the Third Cause of Action, for damages against Deer Crest Janna, LLC, Deer Crest Master Association, Inc., Michael Zaccaro, Gregson Perry, Lynda Fetter, Robert Sammons and Thomas Hodgson, jointly and severally, in an amount to be proven at trial but in any event not less than $1 million, for preliminary and permanent injunctions prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for pre and post judgment interest, costs, and a reasonable attorney's fee;

D. On the Fourth Cause of Action, for damages against Deer Crest Master Association, Inc., Michael Zaccaro, Gregson Perry, Lynda Fetter, Robert Sammons and Thomas Hodgson, jointly and severally, in an amount to be proven at trial but in any event not less than

$1 million, for preliminary and permanent injunctions prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for pre and post judgment interest, costs, and a reasonable attorney's fee;

    E.    On the Fifth Cause of Action, for preliminary and permanent injunctions against Deer Crest Janna, LLC prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for costs and a reasonable attorney's fee;

    F.    On the Sixth Cause of Action, for an order of the Court quieting title to the parties' easement rights by enjoining Deer Crest Janna, LLC 's planned use of the Deer Crest roads in any manner inconsistent with those easement rights, and for costs and a reasonable attorney's fee;

    G.    On the Seventh Cause of Action, for the Court's declaration of the rights and other legal relations of Ms. Rice and all defendants as determined by the Governing Documents and the facts and circumstances alleged herein, for relief based on the Court's declaration, including preliminary and permanent injunctions prohibiting use of Deer Crest roads and other property in any manner inconsistent with the terms of the Governing Documents, and for costs at a reasonable attorney's fee; and

    H.    For such other relief as the Court deems appropriate under the circumstances.

DATED this 23rd day of June, 2009

                      **CLYDE SNOW & SESSIONS**
                      /s/Eric P. Lee
                      ERIC P. LEE
                      JOSEPH D. KESLER
                      Attorneys for Plaintiff

Plaintiff's Address:
421 University Street
Seattle, Washington 98101