IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| JERI RICE,<br><br>    Plaintiff,<br><br>v.<br><br>DEER CREST JANNA, LLC, DEER CREST MASTER ASSOCIATION, INC., MICHAEL ZACCARO, GREGSON PERRY, LYNDA FETTER, ROBERT SAMMONS and THOMAS HODGSON,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:09-CV-00560<br><br>Judge Dee Benson |

This matter is before the court on defendants Deer Crest Janna, LLC and Michael Zaccaro's (collectively "Janna") motion to dismiss (Dkt. No. 16), plaintiff Jeri Rice's motion for summary judgment (Dkt. No. 11), and defendants Robert Sammons, Thomas Hodgson, Lynda Fetter, and Gregson Perry's (collectively "Board Members") motion to dismiss (Dkt. No. 25). A hearing on the motions was held on January 13, 2010. At the hearing, Jeri Rice was represented by Eric P. Lee. Janna was represented by Mark R. Gaylord and Melanie J. Vartabedian. The Board Members and the Deer Crest Master Association ("Master Association") were represented by Kevin N. Anderson and Chad J. Pomerory. After taking the motions under advisement, the court has further considered the law and facts relating to the motion. Being fully advised, the court renders the following Memorandum Opinion and Order.

**BACKGROUND**

This action centers on proposed parking plans for the St. Regis Hotel located within Deer Crest, a master planned community near Deer Valley, Utah. On June 23, 2009, Ms. Rice filed this action against three groups of defendants: (1) Janna, which is the owner and developer of the St. Regis Hotel; the Master Association, which is the entity responsible for managing the common areas of the Deer Crest community; and (3) the Master Association's Board Members. Deer Crest Associates I, Inc. ("DCA") is the owner and master developer of Deer Crest, the fee title owner of the roadways, and a 50% partner in Janna. Michael Zaccaro is a principal of Janna and a member of the Master Association Board. Ms. Rice is the current owner of Deer Crest Lot 120, which she acquired on or before March 13, 2001.

The St. Regis Hotel is located at Roosevelt Gap within Deer Crest. It consists of both commercial and residential space. The residential space is separated into sixty-seven condominium suite units and twenty-four residence units. There is one additional residence unit at the lower Snow Park site. In 2007, DCA leased to Janna a parcel ("Parcel D") in a portion of Deer Crest known as Jordanelle Village. Parcel D is separated from the St. Regis Hotel by slightly more than a mile. Janna intends to use Parcel D for hotel and public parking. Janna also plans to stage a shuttle system using Deer Crest's private roadways, including the road formerly known as Keetley Road, to transport employees between the St. Regis Hotel and the parking lot. The St. Regis Hotel is located in Wasatch County within Park City limits. The Jordanelle Village parking lot is located in unincorporated Wasatch County.

Ms. Rice alleges that Janna's parking plan violates three documents that she claims govern the Deer Crest development. These "governing documents" include: (1) the *Master*

*Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Deer Crest a Planned Recreational Development*, as amended from to time to time ("Master Declaration"); (2) the *Settlement Agreement by and Between Park City Consolidated Mines Company, Trans-Wasatch Company, and Park City Municipal Corporation*, as amended from time to time ("Settlement Agreement"); and (3) Wasatch County's *First Amended Findings and Order on Density Determination,* as amended from time to time ("Density Determination").

**A. Governing Documents**

    1. Master Declaration

The Master Declaration contains DCA's framework for the development of Deer Crest. In approximately 1995, DCA became the owner and master developer of Deer Crest and the fee title owner of the Deer Crest project. In 1997, DCA recorded the Master Declaration in the office of the Wasatch County Recorder. The Master Declaration states that DCA "will develop and convey all of the Lots and Units in the Deer Crest Project subject to the master covenants, conditions, and restrictions, and subject to and together with such easements, all of which shall run with the title to the Property as hereinafter set forth." (Master Declaration ¶ D.) Per the Master Declaration, DCA affirmed that it was "developing a planned recreational development known as the Deer Crest Project" which would contain "neighborhood areas and . . . a mixture of single-family, multi-family, commercial and recreational uses." (Master Declaration ¶ B.) The development would include "private roadways, open space, ski runs, ski ways, trails, and other amenities." *Id*. The Master Declaration also made it known that the Roosevelt Gap development would "consist of one hundred five (105) multifamily lodge condominium Units and certain Commercial Space (which may take the form of condominium units)." (*Id*. § 1.2(c).) The

Master Declaration explicitly grants Deer Crest property owners and their guests "a non-exclusive right and easement of ingress and egress and of enjoyment in, to and over the Common Elements." (*See id.* § 5.1.) The "Common Elements" are all real property, improvements, facilities and equipment owned, controlled and/or managed by the Master Association, including but not limited to roads, road shoulders and appurtenances, walkways, paths, hiking and bicycle trails, ski facilities, street lights, signs, the west and east access gates, recreational areas, open space areas, and landscaping. (*See* Master Declaration § 2.12.)

The Master Declaration reserves in favor of DCA the right from time to time to "establish . . . any facilities necessary or useful for transit purposes, including means of transportation to, from and within the Deer Crest Project," including "shuttle stops" and "to create other interests, reservations, exceptions and exclusions for the best interest of the Master Association and for the benefit of any Owner or all Owners," provided that any such action "does not unreasonably impair the use of the Common Elements or the building areas of Lots designated on the Plat for their respective intended purposes." (*Id.* § 4.1(a)(ii)–(iii).)

The Master Association was created by DCA and charged with administering and enforcing the Master Declaration. (Master Declaration ¶ D.) As Deer Crest property owners, Ms. Rice and Janna are both members of the Master Association. (*Id.* § 3.13.) DCA is also a member of the Master Association. (*Id.*)

For purposes of Ms. Rice's action, the parties focus particular attention on section 7.1 of the Master Declaration entitled "Zoning Regulations." This section provides:

> No lands within the Property shall ever be occupied or used by or for any building or purpose or in any manner which is contrary to the Density Determination, the Settlement Agreement, the zoning regulations, applicable thereto validly in force

4

from time to time, the Master Declaration, or the applicable Neighborhood Declaration.

(*Id*. § 7.1.) The parties also focus on section 3.3 which provides that the Master Association shall be responsible for the "operation, management, regulation, maintenance, repair and replacement of the Common Elements." (*See id*. § 3.3.) Finally, the Master Declaration provides that "[DCA], the Master Association, and any Owner shall have the right to enforce this Master Declaration, the Design Guidelines and the Articles and Bylaws by appropriate proceedings at law or in equity." (*See id*. § 9.1.)

   2. The Settlement Agreement

In 1995, Park City and owners of the property now known as Deer Crest entered into the Settlement Agreement to resolve land use disputes over proposed development of the property. (*See* Settlement Agreement ¶¶ B–C.) The Settlement Agreement imposes certain conditions on development that occurs within the Deer Crest community. As noted previously, the St. Regis Hotel site is located at Roosevelt Gap. At the time of the Settlement Agreement, Roosevelt Gap was located in unincorporated Wasatch County. However, in the Settlement Agreement Park City anticipated that Roosevelt Gap would be annexed into Park City. (*See id*. §§ 5.1, 5.2.2.5.) Regarding access to a hotel development at Roosevelt Gap, the Settlement Agreement provides,

> Roosevelt Gap Lodge [St. Regis Hotel] employee, guest and resident access shall be via a funicular lift, which shall be designed to the reasonable satisfaction of Park City. . . . The funicular lift shall begin at the Snow Park Hotel Site. . . . [V]ehicular access to the Roosevelt Gap Development from Park City via Keetley Road and through the western perimeter controlled access gate(s) . . . shall be limited to service, stock, delivery, and maintenance vehicles. There shall be no guest or employee access to Roosevelt Gap Development . . . via the western perimeter access gate(s).

5

(*Id.* § 5.2.2.9.) For parking at the hotel, the Settlement Agreement originally limited parking to 50 stalls, with no overnight parking. (*See id*. § 5.2.2.10.) Guest and resident parking for the hotel development was to be served by an on-site parking facility at the Snow Park Hotel Site. (*See id*.) However, a later amendment lifted the restriction and provided that,

> there shall be no overnight parking at Roosevelt Gap Lodge unless the Planning Commission approves overnight parking at Roosevelt Gap Lodge in conjunction with a Master Planned Development of a luxury resort hotel, upon Property Owner's demonstration that the remainder of the Project has been modified to result in no net increase of traffic on Keetley Road as a consequence of the provision of overnight parking at Roosevelt Gap. The Planning Commission may approve up to 105 overnight parking spaces at Roosevelt Gap without further Council action.

(Settlement Agreement, Second Amendment ¶ 5, dated April 6, 2001.) The Settlement Agreement further provides that "Property Owners may provide for employee shuttle service from the east perimeter gate to the Roosevelt Gap Lodge [St. Regis Hotel]." (Settlement Agreement § 5.2.2.10.)

### 3. Density Determination

The Density Determination is a Wasatch County document that contains certain development restrictions and conditions for the property now known as Deer Crest. On August 5, 1996, the Wasatch County Board of County Commissioners issued the Density Determination. (*See* Density Determination at 63.) Section VI.11.A. governs parking for the property generally and provides that "[e]ach development site is required to provide its own parking. . . . All parking spaces shall be located on the same parcel as the building or use for which they are required." (Density Determination § VI.11.A.) Section IV.11.B. governs parking for the St. Regis Hotel site and provides that,

> The litigation settlement agreement . . . contemplates that the parking for Roosevelt Gap, if constructed as approved herein as a 105 unit lodge facility, will be primarily

> located at the adjoining Snow Park Hotel site in Deer Valley and will be connected to the Roosevelt Gap facility by funicular tramway so that guests or residents would primarily access the facility from Snow Park. Parking provided in this manner will be acceptable to Wasatch County as meeting the requirement for on-site parking.

(*Id*. § VI.11.B.)

**B. Land Use Authority Decisions**

Both Park City and Wasatch County have issued land use decisions that directly impact the St. Regis Hotel site. First, by 2001, Park City annexed the St. Regis Hotel site into Park City. Second, on or about February 28, 2001, the Park City Planning Commission issued a Conditional Use Permit ("CUP") for the St. Regis Hotel site. On or about July 25, 2001, March 24, 2004, May 11, 2005, and March 22, 2006 DCA applied for and received approval from Park City to amend the Original Hotel CUP. On or about October 15, 2008, Janna sought approval to amend the Original Hotel CUP, as amended, to revise a condition regarding the construction of a parking structure at the Snow Park site and outlined a phasing plan for future units at Snow Park. On or about February 19, 2009, Ms. Rice submitted to the Park City Planning Commission a letter outlining her concerns with Janna's application. Specifically, Rice called to the Planning Commission's attention (a) the purported limitations set forth in the Density Determination; (b) Wasatch County's mandate that parking spaces be located on the same parcel as the building or use for which they are required; and (c) that the Settlement Agreement originally intended to locate the hotel parking at Snow Park and preclude it from the hotel site. On April 22, 2009, the Park City Planning Commission approved Janna's request and amended the Original Hotel CUP. Shortly thereafter, Rice gave notice that she was appealing the Planning Commission's decision to the Park City Council. On or about June 22, 2009, after consideration of Ms. Rice's appeal, the Park City Council affirmed the Planning Commission's land use decision.

Third, the Wasatch County Planning Commission approved a CUP for the Jordanelle Village parking lot on April 16, 2009 after holding a public hearing on April 9, 2009.[1] The Planning Commission held:

> We hereby find that the Density Determination does not support denial of the conditional use permit. First, the parking required for the St. Regis hotel is located at the hotel itself as well as the Snow Park Area. This proposed lot is for parking that is additional to the required parking. Second, we find that the County in the Density Determination contemplated that some of the parking for the hotel site would be located on a different parcel, since 11.B. states that the parking for the hotel site will "be primarily located at the adjoining Snow Park Hotel site in Deer Valley[.]" The language "primarily" clearly shows that the County intended that some of the parking for the St. Regis Hotel would be provided in other locations. Thus, we find that the condition in 11.A. that parking be located on the same parcel was modified by 11.B. and thus does not apply to the St. Regis parking. Thus, the Density Determination is not applicable and is not binding on our decision on whether to grant the conditional use permit.

(Wasatch County Planning Commission Findings of Fact and Conclusions of Law, dated April 16, 2009.) The Planning Commission also found that the Jordanelle Village parking lot did not violate Wasatch County Code Section 16.20.07[2] because: (a) Janna had already provided parking facilities required by Chapter 16.20; (b) Section 16.20.07 only applies to parking that is ancillary or secondary to a primary use; and (c) the St. Regis Hotel is located in Park City and is not subject to the requirements of Chapter 16, the parking lot is the primary use in Wasatch County and therefore it is not subject to the requirements of Section 16.10.07. (*See id.*) Ms. Rice appealed the Wasatch County Planning Commission's decision to the Board of Adjustment, who

---

[1]Ms. Rice and her representatives provided written objections prior to and verbal objections during the public hearing on April 9, 2009, wherein Ms. Rice objected to approval of the CUP on the grounds that Janna's parking plan violated Wasatch County code, the Density Determination, and the Settlement Agreement.

[2]Wasatch County Code § 16.20.07 provides: "The off-street parking facilities required by this chapter shall be located on the same lot as the use."

affirmed the approval of the Jordanelle Village parking lot CUP on June 4, 2009 after holding a public hearing.

**C. The Complaint**

Ms. Rice's complaint states seven causes of action. First, Ms. Rice contends that Janna has expressed an unequivocal intent to breach the Master Declaration by using Deer Crest property in a manner which is contrary to the Settlement Agreement, the Density Determination and applicable zoning regulations. Second, Ms. Rice asserts that the Master Association and its Board "anticipatorily breached the [Master] Declaration by permitting Janna's proposed use of Deer Crest property in a manner that violates Section 7.1. Third, Ms. Rice alleges that Janna, the Master Association, and the Board breached an implied covenant of good faith and fair dealing. Fourth, Ms. Rice alleges that the Master Association and the Board Members breached fiduciary duties owed to Ms. Rice and other Deer Crest property owners. Fifth, Ms. Rice asserts her right to enjoin any violation of the Master Declaration. Sixth, Ms. Rice alleges she is entitled to an order of the court quieting title to the parties' easement rights by enjoining Janna's planned use of the Deer Crest roads in a manner inconsistent with those easement rights. Seventh, Ms. Rice requests the court's declaration of the parties' rights and legal relations. Ms. Rice claims damages of not less than $1 million and seeks preliminary and permanent injunctions prohibiting use of Deer Crest property inconsistent with the terms of the governing documents.

## ANALYSIS

**A. Janna's Motion to Dismiss**

Janna argues that this court lacks subject matter jurisdiction over Ms. Rice's action because Ms. Rice failed to comply with the appeal requirements of Utah's Municipal Land Use,

Development, and Management Act ("MLUDMA") and County Land Use, Development, and Management Act ("CLUDMA").³ The relevant language of MLUDMA provides:

> (1) No person may challenge in district court a municipality's land use decision made under this chapter, or under a regulation made under authority of this chapter, until that person has exhausted the person's administrative remedies as provided in Part 7, Appeal Authority and Variances, if applicable.
>
> (2)(a) Any person adversely affected by a final decision made in the exercise of or in violation of the provisions of this chapter may file a petition for review of the decision with the district court within 30 days after the local land use decision is final.

Utah Code Ann. § 10-9a-801(1), 2(a) ("appeals section"). The appeal requirements of MLUDMA and CLUDMA parallel one another. *See* Utah Code Ann. § 17-27a-801(1), 2(a). Janna contends that either appeals section bars Ms. Rice's action in its entirety because her "enforcement" action indirectly challenges land use decisions made by Wasatch County and Park City. In response, Ms. Rice contends that her claims are not subject to the appeal requirements of MLUDMA or CLUDMA because none of her claims challenge a land use decision. Ms. Rice argues that her claims seek to enforce the contractual obligations and rights which were created and imposed upon the parties in the Master Declaration, independent of any land use decisions.

The court agrees with Ms. Rice that the appeal requirements of CLUDMA and MLUDMA do not preclude enforcement of the Master Declaration. Utah courts have only

---

³For municipalities, the Utah Legislature adopted MLUDMA, which entitles municipalities to enact all ordinances, resolutions, and rules that they consider necessary or appropriate for the use and development of land within the municipality. *See* Utah Code Ann. § 10-9a-102(2). Similarly, the Utah Legislature adopted CLUDMA, which entitles counties to enact all ordinances, resolutions, and rules that they consider necessary or appropriate for the use and development of land within a particular county. Utah Code Ann. § 17-27a-102(1)(b).

10

applied the statutory appeal requirements where a plaintiff challenges a land use authority's decision under MLUDMA or CLUDMA. *See Foutz v. City of South Jordan*, 100 P.3d 1171, 1176–77 (Utah 2004); *Culbertson v. Bd. of County Comm'rs*, 44 P.3d 642, 652 (Utah 2001). Here, Ms. Rice does not challenge a land use authority's decision under MLUDMA or CLUDMA. Ms. Rice's complaint states seven causes of action, none of which directly challenges a land use decision.

In urging the court to bar Ms. Rice's claims, Janna relies on *Foutz v. City of South Jordan*, 100 P.3d 1171 (Utah 2004). In *Foutz*, plaintiffs challenged South Jordan City's approval of a site plan near the Jordan River that changed property from an agricultural zone to an office service zone. 100 P.3d at 1172. The plaintiffs claimed that South Jordan City had violated its own ordinances and a master development agreement that South Jordan had entered into with a development company. *Id.* at 1172–73. The plaintiffs brought their suit under section 10-9-1002, MLUDMA's enforcement section at the time. *Id.* at 1172. South Jordan City argued that plaintiffs' action was untimely because its approval of the site plan constituted a land use decision that was subject to the appeal requirements of MLUDMA. *Id.* at 1173–74. South Jordan City urged "that plaintiffs not be allowed to circumvent the requirements of [the appeals] section by characterizing their claim as an 'enforcement action' brought pursuant to section 10-9-1002." *Id* at 1174. The Supreme Court of Utah held that "a party seeking to challenge a municipality's land use decision under the Municipal Land Use Development and Management Act must comply with [the appeal requirements]. A party may not avoid those requirements by characterizing its challenge to the land use decision as an enforcement action under section10-9-1002." *Id.* at 1177. The Court explained:

11

> Because virtually every challenge to a land use decision could be alternatively characterized as an "enforcement" action, allowing a challenge to a municipality's land use decision under the Enforcement section would nullify the very existence of the exhaustion and timing requirements specified in the Appeals section. We therefore hold that plaintiffs, as parties seeking redress from a municipal land use decision, were obligated to comply with the requirements of the Appeals section.

*Id.* at 1174. As previously noted, the appeals section of CLUDMA parallels the appeals section of MLUDMA.

The court finds that *Foutz* is readily distinguishable from the situation presented here. Unlike the plaintiffs in *Foutz*, Ms. Rice has not brought an enforcement action against a land use authority under MLUDMA or CLUDMA. Rather, Ms. Rice's action is a private one, seeking to enforce contractual obligations and rights imposed upon the parties in the Master Declaration. The statutory appeal requirements simply do not apply in this case.

Janna's motion to dismiss for lack of subject matter jurisdiction is DENIED.

## B. Ms. Rice's Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080, 1085 (10th Cir. 2008). The court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element necessary to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Ms. Rice argues that she is entitled to summary judgment because Janna breached the Master Declaration by locating the hotel parking more than a mile away from the St. Regis Hotel, on a different parcel. Section 7.1 of the Master Declaration prohibits use or occupancy of any land within the Deer Crest development for any "purpose or in any manner which is contrary to the Density Determination." (Master Declaration § 7.1.) Section VI.11A of the Density Determination, states: "All parking spaces shall be located on the same parcel as the building or use for which they are required." (Density Determination § VI.11A.) Ms. Rice contends that because the parking spaces at the Jordanelle Village parking lot are not located on the same parcel as the St. Regis Hotel, the parking scheme is a use of the Deer Crest property which is contrary to the Density Determination, in violation of section 7.1 of the Master Declaration. Janna makes two arguments in response.

1. <u>Lack of Subject Matter Jurisdiction</u>

Janna argues that this court should deny Ms. Rice's motion for summary judgment because the court lacks jurisdiction to hear Ms. Rice's claims due to her failure to appeal the Wasatch County Board of Adjustment's decision as required by Utah law.

This argument fails because the court has already held that Ms. Rice's failure to comply with the appeal requirements of MLUDMA or CLUDMA does not bar her from seeking to enforce her rights created in the Master Declaration.

2. <u>No Violation of the Master Declaration</u>

Janna also argues the Jordanelle Village parking lot does not breach the Master Declaration because it does not violate the Density Determination. Specifically, Janna argues

13

Ms. Rice cannot and has not shown that Janna is violating the Density Determination since its planned use of the parking lot has been expressly authorized by Wasatch County.

To determine whether the Jordanelle Village parking lot violates the Density Determination the court looks to Wasatch County, the land use authority that issued the Density Determination. Section VI.11.A. governs parking for Deer Crest generally and provides that "[a]ll parking spaces shall be located on the same parcel as the building or use for which they are required." (Density Determination § VI.11A.) Section IV.11.B. governs parking for the St. Regis Hotel site and provides that "[t]he litigation settlement agreement . . . contemplates that the parking for Roosevelt Gap . . . will be primarily located at the adjoining Snow Park Hotel site . . . . Parking provided in this manner will be acceptable to Wasatch County as meeting the requirement for on-site parking." (*Id*. § VI.11.A.) The Wasatch County Planning Commission approved a CUP for the Jordanelle Village parking lot on April 16, 2009 after holding a public hearing on April 9, 2009. Ms. Rice and her representatives provided written objections prior to and verbal objections during the public hearing on April 9, 2009, wherein she objected to approval of the CUP on the grounds that it violated the Density Determination. Nevertheless, the Planning Commission found that the Jordanelle Village parking lot did not violate its Density Determination. The Planning Commission stated:

> We hereby find that the Density Determination does not support denial of the conditional use permit. First, the parking required for the St. Regis hotel is located at the hotel itself as well as the Snow Park Area. This proposed lot is for parking that is additional to the required parking. Second, we find that the County in the Density Determination contemplated that some of the parking for the hotel site would be located on a different parcel, since 11.B. states that the parking for the hotel site will "be primarily located at the adjoining Snow Park Hotel site in Deer Valley[.]" The language "primarily" clearly shows that the County intended that some of the parking for the St. Regis Hotel would be provided in other locations. Thus, we find that the condition in 11.A. that parking be located on the same parcel

14

>was modified by 11.B. and thus does not apply to the St. Regis parking. Thus, the Density Determination is not applicable and is not binding on our decision on whether to grant the conditional use permit.

(Wasatch County Planning Commission Findings of Fact and Conclusions of Law, dated April 16, 2009.) The Board of Adjustments affirmed the Planning Commission's approval of the Jordanelle Village parking lot CUP on June 4, 2009 after another public hearing. Wasatch County has the authority to determine what the Density Determination means, and it has. Under these circumstances, Ms. Rice simply has no case. The very entity that issues the Density Determination has interpreted what it means.

Ms. Rice's motion for summary judgment is DENIED.

## C. Board Member's Motion to Dismiss

The court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

The Board Members argue that Ms. Rice's claims against the Board Members should be dismissed because they are derivative claims. In the alternative, the Board Members argue that Ms. Rice's claim of breach of fiduciary duty should be dismissed because the governing documents were not violated and because the Board Members are protected by the business judgment rule. The Board members also argue that Ms. Rice's claims for breach of contract against the Board Members should be dismissed because Ms. Rice failed to show how the Board Members are personally liable for an alleged breach of the Master Declaration. In response, Ms. Rice argues that her claims are not derivative, but rather are direct claims based on her contractual rights under the Master Declaration. Ms. Rice contends that the Board Members are

not sheltered by the business judgment rule because the Board Members' actions were tainted by self-interest and were unreasonable. Ms. Rice also argues that the governing documents were violated. And finally, Ms. Rice argues that the Board Members are personally liable for breach of the Master Declaration because they acted in bad faith.

First, the court must determine whether Ms. Rice's claims against the Board Members are derivative or direct. The characterization of an action as derivative or direct is a question of state law. *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1200 (10th Cir. 2004); *Sax v. World Wide Press, Inc*., 809 F.2d 610, 613 (9th Cir. 1987). Utah law defines derivative suits as,

> those which seek to enforce any right which belongs to the corporation. Actions alleging mismanagement, breach of fiduciary duties . . . generally belong to the corporation, and therefore, a shareholder must bring such actions on its behalf. Moreover, even though wrongdoing or fraud of corporate officers may indirectly injure shareholders, shareholders generally cannot sue directly for those injuries.

*Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1280 (Utah 1998) (internal quotation marks and citation omitted); *see also Warner v. DMG Color*, Inc., 20 P.3d 868, 872 (Utah 2000). In contrast, a direct claim is one where "the injury is one to the plaintiff as a stockholder . . ., and not to the corporation, as where the action is based on [a] contract to which he is a party, or on a right belonging severally to him." *GLEP, Ltd. v. CL Management, Ltd.*, 163 P.3d 636, 640 (Utah Ct. App. 2007) (internal quotation marks and citation omitted). A shareholder may sue in his individual capacity in a direct action when he can show that he was injured in a manner distinct from the corporation. *Id.* (citation omitted). Claims brought by members of non-profit corporations will be analyzed under the same parameters. *See generally Dansie v. City of Herriman*, 134 P.3d 1139 (Utah 2006). If a member attempts to bring such a claim individually and not as a derivative action, the claim will be dropped. *Id.* at 1144.

16

The court finds that Ms. Rice's claims against the Board Members fall squarely in the category of derivative. First, Ms. Rice's complaint is riddled with allegations of wrongdoing against the Master Association. Every owner of a lot in Deer Crest is a member of the Master Association. In her complaint, Ms. Rice alleges that the Board failed to "tell the Deer Crest homeowners what it knew because DCA exercised effective control over the Board." (Compl. ¶ 27.) Ms. Rice alleges that the Board was aware of Janna's efforts but made no effort "to inform any other Deer Crest owner." (*Id*. ¶ 31.) Ms. Rice alleges no "Deer Crest owner besides DCA and Janna approved or were even asked to approve the employee busing plan." (*Id*. ¶ 33.) Ms. Rice further alleges that the Board Members favored "the interests of Janna over the other Deer Crest property owners." (*Id*. ¶ 69.) And finally, Ms. Rice claims the Board Members were not acting in the "best interest of the [Master] Association." (*Id.* ¶ 70.)

Second, Ms. Rice has failed to show an injury to herself that is distinct from that suffered by the Master Association. Ms. Rice contends that her claims are not derivative because her claims are based on contractual rights under the Master Declaration and on her loss in her property value and quiet enjoyment of her home. The court finds Ms. Rice's arguments unpersuasive. The Supreme Court of Utah stated:

> A shareholder does not sustain an individual injury because a corporate act results in disparate treatment among shareholders. Rather, the shareholder must examine his injury in relation to the corporation and demonstrate that the injury was visited upon him and not the corporation.

*Dansie*, 134 P.3d at 1144 (citation omitted). The court notes that Ms. Rice is not a party to the Master Declaration. Ms Rice's rights and non-exclusive easements under the Master Declaration stem from her status as a property owner. These same rights and easements belong to all Deer Crest property owners. All property owners share the risk that their rights, easements, property

17

values and quiet enjoyment could be impacted by traffic from the St. Regis Hotel. Ms. Rice herself states that the Board Members allowed DCA to take actions that "will effectively destroy Deer Crest's quiet, secure and exclusive qualities by turning the main road through Deer Crest, then known as Keetley Road, into a public thoroughfare for the [hotel]." (Dkt. No. 43, Pl.s Opp. to Bd. Members' Mot to Dismiss at 3.) Ms. Rice has failed to demonstrate a unique injury. Accordingly, the court finds that Ms. Rice's claims are derivative.

Because the court finds that Ms. Rice's claims are derivative, the court need not address whether the governing documents were violated, whether the Board Members are protected by the business judgment rule, or whether the Board Members can be personally liable for a breach of the Master Declaration.

The court dismisses Ms. Rice's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty against the Board Members.

## CONCLUSION

For the foregoing reasons, Janna's motion to dismiss is DENIED. Ms. Rice's motion for summary judgment is DENIED. The Board Members' motion to dismiss is GRANTED.
IT IS SO ORDERED.

DATED this 29th day of March, 2010.

_____
Dee Benson
United States District Judge